UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

VIVIAN CONCEPCION,          :
                            :
    Plaintiff,              :     No. 3:17-CV-1854 (VLB)
                            :
    v.                      :
                            :     December 12, 2018
CONTINUUM OF CARE,          :
                            :
    Defendant.              :
                            :

## MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS [DKT. 27]

On November 3, 2017, Plaintiff Vivian Concepcion ("Plaintiff") filed the instant employment discrimination action *pro se* against her former employer Defendant Continuum of Care ("Defendant"). Dkt. 1. On June 29, 2018, Defendant moved to dismiss. Dkt. 27. The Court granted Plaintiff's motion for an extension of time to respond to the motion to dismiss. Dkt. 35. Plaintiff's deadline to oppose the motion to dismiss was August 20, 2018. Plaintiff failed to file a response. On October 26, 2018, the Court ordered Plaintiff to file a response to the motion to dismiss and notified her that if she failed to do so her complaint would be dismissed.[1] Dkt. 42. On November 5, 2018, the Court granted the motion to

---

[1] On the final day to comply with the Court's order, Plaintiff made a late afternoon in-person filing. Although the filing is dated November 2, 2018, the Court was not aware of it until after it granted Defendant's motion to dismiss on November 5, 2018. Dkt. 44. Plaintiff's filing fails to substantively respond to the motion to dismiss. It contains medical records and filings before the Connecticut Commission on Human Rights and Opportunities ("CHRO"). Plaintiff does not include a memorandum of law. However, because Plaintiff filed a response and in light of the Second Circuit's preference for resolving disputes on the merits, the Court further articulates its ruling on Defendant's motion to dismiss.

dismiss. Dkt. 44. For the following additional reasons, Defendant's motion to dismiss is GRANTED.

I.   Background

In her form complaint, Plaintiff states that her action is brought pursuant to Title VII of the Civil Rights Act of 1964, the Rehabilitation Act, and the Americans with Disabilities Act ("ADA"). Dkt. 1. She alleges that Defendant's conduct was based on her race, sex, and national origin. She also claims she was discriminated against on the basis of her anxiety disability, race, and age for promotion. However, when asked in the form complaint to describe facts surrounding her discrimination claim, Plaintiff only states that her supervisor told her that they "were going to have a supervision" and Plaintiff responded that she "did not want to participate in a supervision" because she "did not feel well at the time." *Id*. Next, she claims her supervisor followed her around the client's home, stated repeatedly that they needed to do the supervision, and got into Plaintiff's "personal space." *Id*. Plaintiff previously filed charges with the CHRO. She did not attach a Notice of Right to Sue letter. She seeks reinstatement and $120,000. *Id*.

Plaintiff attached a seven-page letter to her form complaint which is dated July 12, 2015 and addressed to the CHRO.[2] It is unsigned and there is no indication that it was ever received by the CHRO. Plaintiff does not expressly incorporate the letter into the form complaint. In response to the form complaint's request that Plaintiff explain why she disputes the CHRO's decision that there was no probable

---

[2] Defendant's motion to dismiss fails to address the letter attached to the form complaint and the additional discrimination claims contained therein. Because the Court considers the letter part of Plaintiff's complaint, as discussed herein, the Court will analyze all of the allegations in the letter.

2

cause to believe discrimination occurred, she states "because of my complaint of discrimination with CHRO papers attach [*sic*]." *Id*. The letter states that it is her response to Defendant's answer before the CHRO. *Id*. Plaintiff discusses her job performance and complaints of discrimination, including Family and Medical Leave Act ("FMLA") interference and retaliation, failure to accommodate and retaliation under the ADA and race discrimination. *Id*. She claims *inter alia* that Defendant harassed her and discriminated against her after she disclosed an anxiety disorder and requested an accommodation. *Id*. Plaintiff alleges that she had anxiety, specifically that she "did not feel comfortable going down into the basement alone, especially during [her] night shifts." *Id*. Plaintiff acknowledges that it was every staff person's responsibility to do laundry on his or her shift and the laundry was located in the basement. *Id*. She alleges she requested an accommodation and provided Defendant with a medical note. Ultimately, she alleges that Defendant placed her on a final written warning for failure to do the laundry. Plaintiff was terminated on July 18, 2015. Plaintiff makes no specific factual allegations regarding her termination in the form complaint or the letter attached to it.

Defendant moves to dismiss the complaint on the grounds that Plaintiff failed to properly plead exhaustion and failed to exhaust her claims of race, sex, national origin, age and any claim related to promotion. *See* Dkt. 28. Defendant also argues that Plaintiff's disability discrimination claims fail to state a claim for relief. *Id*. In support of its motion to dismiss, Defendant attaches several exhibits, including Plaintiff's original complaint before the CHRO dated May 11, 2015 and Plaintiff's amended complaint dated March 10, 2016. *Id.* at Exs. 2, 4.

3

II.     **Consideration of Materials Outside the Complaint**

As explained above, both parties have attached additional materials to their pleadings. Plaintiff attached a letter addressed to the CHRO to her form complaint. Defendant attached several exhibits to its motion to dismiss: (1) Plaintiff's CHRO complaint dated May 11, 2015, (2) EEOC notice of charge dated August 5, 2015, (3) Plaintiff's amended CHRO complaint dated March 10, 2016, and (4) notice of final agency action dated May 11, 2017. *Id.* at Exs. 1-4.

On a motion to dismiss, the Court is permitted to consider (1) documents attached to the complaint as an exhibit or incorporated by reference, (2) matters of which judicial notice may be taken, and (3) documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in filing the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *see also Mancuso v. Dunbar*, No. 3:08-CV-1018 (VLB), 2010 WL 466004, at *4 n.3 (D. Conn. Feb. 5, 2010) ("The Court may take judicial notice of documentation from administrative proceedings without converting the current motion into a motion for summary judgment."). Here, the Court will consider the documents submitted by both parties. Plaintiff filed her letter to the CHRO along with her form complaint. She does not expressly incorporate the letter into her complaint, but she references it. The Court finds that this is sufficient given Plaintiff's *pro se* status. The Court will also take judicial notice of the underlying CHRO complaints submitted by Defendant as exhibits to its motion to dismiss.

### III. Defendant's Motion to Dismiss for Failure to State a Claim

Plaintiff alleges disability discrimination and retaliation, FMLA interference and retaliation, and discrimination based on race, sex, age and national origin. Defendant moves to dismiss the complaint on the grounds that Plaintiff failed to properly allege exhaustion and failed to exhaust her claims of race, sex, national origin, age and any claim relation to promotion. *See* Dkt. 28. Defendant also argues that Plaintiff's disability discrimination claims fail to state a claim for relief. *Id.*

#### A. Legal Standard

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Sarmiento v. U.S.*, 678 F.3d 147, 152 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (internal citation and quotation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the

5

complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

"*Pro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Although courts still have an obligation to interpret "a *pro se* complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

B. Exhaustion

Defendant argues that Plaintiff failed to properly plead exhaustion of administrative remedies because she failed to attach a notice of the right to sue letter to her complaint. Defendant argues that Plaintiff's complaint should be dismissed on this basis. The Supreme Court has held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal

court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). The Second Circuit has explained that "a plaintiff's failure to obtain a notice-of-right-to-sue-letter is not a jurisdictional bar, but only a precondition to bringing a Title VII action that can be waived by the parties or the court." *Pietras v. Bd. of Fire Comm'rs of Farmingville Fire Dist.*, 180 F.3d 468, 474 (2d Cir. 1999). In this case, Plaintiff filed a charge with the CHRO, but she did not file a notice of right to sue letter. In her form complaint, Plaintiff states that she filed charges with the CHRO and that the EEOC issued a right to sue letter in 2014. This date appears to be incorrect since Plaintiff did not bring her CHRO claim until 2015. Regardless, Plaintiff does not attach her right to sue letter or allege that this precondition is subject to waiver, estoppel or equitable tolling. Thus, the Court finds that she has not alleged that she has exhausted her administrative remedies.

Courts in this circuit have granted *pro se* plaintiffs leave to amend where they failed to attach a right to sue letter or allege that the exhaustion requirement was otherwise waived or tolled. *See, e.g., Duarte v. W. Conn. Health Network*, No. 3:16-CV-01757 (JAM), 2017 WL 3499937, at *1 (D. Conn. July 11, 2017) (dismissing complaint but allowing *pro se* plaintiff to amend to allege exhaustion and attach release of jurisdiction from CHRO); *Canty v. Wackenhut Corrections Corp.*, 255 F. Supp. 2d 113, 117 (E.D.N.Y. 2003) (dismissing complaint for failure to allege exhaustion of administrative remedies but allowing *pro se* plaintiff to amend). For the foregoing reasons, the Court dismisses Plaintiff's claims but will allow Plaintiff

7

to move to reopen as to her disability retaliation claim only to allege exhaustion and attach a notice of right to sue letter.

C.   Analysis

1.   Disability Discrimination Claims

Plaintiff's allegations can be construed to allege disability discrimination claims based on failure to accommodate and retaliation. To state a claim for failure to accommodate, a plaintiff must show that: "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004); *see also Ray v. Weit*, 708 Fed. App'x 719, 721 (citing *McBride v. BIC Consumer Prod. Mfg. Co. Inc.*, 583 F.3d 92, 97 (2d Cir. 2009). Plaintiff must also allege that she is a "qualified individual" under the ADA, which is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *McBride*, 583 F.3d at 96 (2d Cir. 2009) (quoting 42 U.S.C. § 12111(8)).

The ADA, as amended in 2009, defines "disability" with respect to an individual as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."[3] 42 U.S.C. § 12102(1). The

---

[3] The Court will address the first prong of the disability analysis. Plaintiff does not allege that she has a record of an impairment or that Defendant regarded her as having an impairment. However, even if Plaintiff's allegations could reasonably be construed as alleging that Defendant regarded Plaintiff has having a disability, her claim would still fail.

8

definition of disability must be "construed in favor of broad coverage." *Id*. at 12102(4)(A). To determine whether a plaintiff suffers from a disability, the Court must consider: "(1) whether plaintiff had an impairment; (2) whether the impairment affected a 'major life activity' within the meaning of the ADA; and (3) whether that major life activity was substantially limited by the impairment."[4] *Laface*, No. 2:18CV01314, 2018 WL 6002395, at *6 (internal citation and quotation marks omitted). If Plaintiff fails to satisfy any of these three prongs, her discrimination claim must be dismissed. *Id.*

Plaintiff alleges that she has anxiety, but she fails to allege that her anxiety affected a major life activity. Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Plaintiff alleges that her anxiety affected her ability to go into a basement at night, but her claim fails because this is not a major life activity. *Pineda v. ESPN, Inc.*, No. 3:18-CV-325 (MPS), 2018 WL 5268123, at *4 (D. Conn. Oct. 23, 2018) (dismissing discrimination claim based on PTSD where plaintiff failed to allege how her condition substantially

---

"This inquiry turns on the employer's perception of the employee and is therefore a question of intent, not whether the employee has a disability." *Laface v. E. Suffolk Boces*, No. 218CV01314ADSAKT, 2018 WL 6002395, at *7 (E.D.N.Y. Nov. 15, 2018) (internal citations and quotation marks omitted). Plaintiff alleged that Defendant told her that she was coming up with a "myriad of reasons" for why she did not have to do the laundry. Indeed, Plaintiff does not allege that Defendant regarded her as disabled, but that Defendant thought she was making excuses to avoid doing her job.

[4] Plaintiff checked the box in her form complaint indicating that she was bringing her action pursuant to the Rehabilitation Act. Plaintiff does not make any specific allegations about this statute, however, it adopts the definition of disability set forth in the ADA. Therefore, to the extent Plaintiff alleged a Rehabilitation Act claim, it fails for the same reasons her ADA claim fails. *See* 29 U.S.C. § 705(9).

limits a major life activity); *see also Cain v. Mandl Coll. of Allied Health, Mandl Coll., Inc.*, No. 14 CIV. 1729 (ER), 2016 WL 5799407, at *7 (S.D.N.Y. Sept. 30, 2016) (dismissing *pro se* complaint that contained "no allegations as to how Plaintiff's PTSD 'substantially limits' one or more of her 'major life activities'"); *see also Laface*, No. 218CV01314, 2018 WL 6002395, at *6 (dismissing discrimination claim where plaintiff alleged that his disability limited his ability to drive on the grounds that driving is not a major life activity). Plaintiff does not allege that her anxiety affected her from performing the major life activity of working. In fact, Plaintiff states that "the only job function that was performed in the basement was laundry." Dkt. 1. Plaintiff was able to perform all the other functions of her job and therefore she could have performed a similar job where the laundry was not located in the basement. *See Mazzeo v. Mnuchin*, No. 17-2686, 2018 WL 4492847, at *2 (2d Cir. Sept. 19, 2018) ("Although working is considered a major life activity, "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.") (internal citations and quotation marks omitted). Plaintiff fails to allege that she is a person with a disability under the meaning of the ADA, thus her failure to accommodate claim must fail.

The final step in determining whether a plaintiff has a disability under the ADA is to determine whether she has alleged that her impairment substantially limits any major life activities. Plaintiff has not successfully pled that her impairment limits a major life activity, therefore the Court is unable to address this element. Because Plaintiff cannot establish her disability, her claim for failure to accommodate fails.

Plaintiff's complaint states a claim for disability retaliation.[5] "To establish a prima facie case of retaliation under the ADA, a plaintiff must establish that: (1) the employee was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action."[6] *Logan v. SecTek, Inc.*, 632 F.Supp.2d, 179, 184 (D. Conn. 2009) (quoting *Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 234 (2d Cir. 2000).

As to the first element, a plaintiff engaged in protected activity if she "opposed any act or practice made unlawful" by the ADA or "made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing" under the ADA. 42 U.S.C § 12203(a). Plaintiff engaged in protected activity when she requested a reasonable accommodation and filed her charge with the CHRO. Defendant was aware of Plaintiff's accommodation request and CHRO charge.

With regard to adverse employment action, Plaintiff alleges that after she requested an accommodation, she was placed on a final written warning. Plaintiff

---

[5] Defendant's motion to dismiss makes cursory arguments in response to Plaintiff's disability claims. First, Defendant argues that Plaintiff failed to exhaust her administrative remedies because her amended complaint before the CHRO does not reference the ADA. The Court finds that Plaintiff's state disability discrimination claims are reasonably related to her ADA claims and therefore she has exhausted her administrative remedies. Second, the Court is not persuaded by Defendant's argument that the form complaint does not contain allegations of discrimination because as discussed *infra*, the Court will consider the letter attached to Plaintiff's complaint.

[6] The Rehabilitation Act contains "similar provisions against retaliation and [is] governed in this respect by the same standards as the ADA." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). Therefore, Plaintiff's Rehabilitation Act claim for retaliation survives to the same extent as her ADA claim for retaliation.

does not directly allege that she was terminated in retaliation for requesting an accommodation or filing her charge before the CHRO, but she alleges that Defendant admonished her for "having expressed [her] disability and fears" and that her termination was retaliatory. Dkt. 1. Plaintiff's first allegation does not rise to the level of an adverse employment action because such actions must constitute "a materially adverse change in the terms and conditions of employment." *Sanders v. New York City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004). However, termination suffices as an adverse employment action. *Id*. Therefore, the Court finds that Plaintiff has established an adverse employment action.

Plaintiff's allegations meet the final hurdle to show causation. "As other courts within the Second Circuit have held, temporal proximity is sufficient to raise an inference of discrimination to plausibly state a claim of employment discrimination." *Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 437 (E.D.N.Y. 2015) (quoting *Shlafer v. Wackenhut Corp.*, 837 F. Supp. 2d 20, 27 (D. Conn. 2011)); *see also Siuzdak v. Lynch*, No. 14-CV-001543 (VAB), 2016 WL 868801, at *6 (D. Conn. Mar. 7, 2016) (denying motion to dismiss where plaintiff filed EEOC complaint and retaliatory investigation occurred four months later). Plaintiff sufficiently alleges that a causal connection existed between her request for a reasonable accommodation and the adverse employment action. Here, Plaintiff alleges that she met with Defendant on May 11, 2015 to discuss her accommodations. This is the same day Plaintiff filed her charge with the CHRO. In her form complaint, Plaintiff states that she was terminated on July 18, 2015. Taking these allegations together, the Court finds that a causal connection existed

between Plaintiff's alleged discussion of her accommodation and her termination. However, as explained above, the Court allows Plaintiff twenty-one days to move to reopen to allege exhaustion and attach a notice of right to sue letter.

2. Race, Sex, National Origin and Age Discrimination Claims

Plaintiff's race, sex, national origin and age discrimination claims fail because she did not exhaust her administrative remedies. "Exhaustion of administrative remedies through the EEOC is 'an essential element' of the Title VII and ADEA statutory schemes and, as such, a precondition to bringing such claims in federal court." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (internal citations and quotation marks omitted). "[A] district court only has jurisdiction to hear such claims where they were either included in an EEOC charge or are based on conduct subsequent to the charge which is 'reasonably related' to that alleged in the EEOC charge." *Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993) *superseded by statute on other grounds as stated in Hawkins v. 1115 Legal Serv. Care,* 163 F.3d 684 (2d Cir. 1998). "A claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." *Deravin v. Kerik*, 335 F.3d 195, 200-01 (2d Cir. 2003) (internal citation and quotation marks omitted).

Plaintiff brought her complaint before the CHRO on May 11, 2015 and amended her complaint on March 10, 2016. Plaintiff did not allege claims for race, sex, national origin or age discrimination in either complaint. The complaints allege only disability discrimination and retaliation based on her anxiety disorder
13

and Defendant's alleged failure to provide an accommodation. Therefore, the Court dismisses Plaintiff's claims of race, sex, national origin and age discrimination because they are not based on conduct reasonably related to disability discrimination.

Even if these claims were reasonably related to the claims raised in the CHRO complaint, they would still fail. To state a claim for discrimination under Title VII, "a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015); *see also Gupte v. Watertown Bd. of Educ.,* No. 3:17-CV-283 (JCH), 2018 WL 4054880, at *5 (D. Conn. Aug. 24, 2018) ("To state a claim for age discrimination under the ADEA, a plaintiff must plausibly allege that (1) her employer took adverse action against her, and (2) that age was the 'but for' cause in the employer's adverse action.") (internal citation and quotation marks omitted). In her complaint before this Court, Plaintiff alleges that Defendant put her on a final warning because of her race. Plaintiff claims her allegation of race discrimination is "confirmed" because she asked a co-worker "how she would feel if something like this was happening to her children, who are biracial." Dkt. 1. Plaintiff does not allege any facts to show that race, sex, national origin or age were factors in any of Defendant's employment decisions against her. Therefore, Plaintiff's race, sex, national origin and age discrimination claims are dismissed.

### 3. FMLA Interference and Retaliation Claims

Plaintiff fails to state claims for FMLA interference and retaliation.[7] To state a claim for FMLA interference, Plaintiff must show: "(1) [S]he is an eligible employee under the FMLA; (2) that [the employer] is an employer as defined in [the] FMLA; (3) that [she] was entitled to leave under [the] FMLA; (4) that [she] gave notice to [the employer] of [her] intention to leave; and (5) that [she] was denied benefits to which she was entitled under [the] FMLA." *Wanamaker v. Westport Bd. of Educ.*, 899 F. Supp. 193, 205 (D. Conn. 2012) (collecting cases). To state a claim for FMLA retaliation, Plaintiff must show: "(1) [she] exercised rights protected under the FMLA; (2) [she] was qualified for [her] position; (3) [she] suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Id.* at 206-07 (quoting *Potenza v. City of New York*, 365 F.3d 165, 167-68 (2d Cir. 2004)). Plaintiff must also allege that the FMLA leave was a negative factor in the termination decision. *Id.*

Plaintiff fails to allege the necessary elements for FMLA interference or retaliation. With regards to her interference claim, Plaintiff fails to allege that she was denied FMLA benefits to which she was entitled. In fact, Plaintiff alleges that she "applied for and was granted FMLA." Dkt. 1. With regards to her retaliation claim, Plaintiff alleges that at a meeting in May 2015, Defendant yelled at her, indicated that she was violating policy by calling out of work under approved FMLA

---

[7] The FMLA does not require an exhaustion of administrative remedies prior to commencing an action under its provisions. *DiCesare v. Town of Stonington*, No. 15-CV-1703 (VAB), 2017 WL 1042056, at *6 (D. Conn. Mar. 17, 2017).

leave time, and advised her that she was being disciplined for not having the proper paperwork in place. *Id.* Plaintiff claims Defendant intentionally retaliated against her because of her FMLA claims. In considering whether a comment is probative of intent to discriminate, a court must consider: "(1) who made the remark, i.e. a decisionmaker, a supervisor, or a low-level co-worker; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark, i.e., whether a reasonable juror could view the remark as discriminatory; and (4) the context in which the remark was made, i.e., whether it was related to the decisionmaking process." *Wanamaker*, 899 F. Supp. 2d at 208 (internal citation and quotation marks omitted). Plaintiff does not allege who made these comments to her, but it appears they were made approximately two months prior to her termination. The Court does not find that the remark is discriminatory because it relates to her failure to file the correct paperwork not her FMLA leave. Moreover, Plaintiff does not allege that it was made in relation to Defendant's decision to terminate her. Therefore, Plaintiff's claims for FMLA interference and retaliation are dismissed.

IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. This dismissal is without prejudice in deference to Plaintiff's *pro se* status. The Court grants Plaintiff liberty to file a motion to reopen together with an amended complaint within twenty-one days of the date of this order, as to her claim for disability retaliation only, alleging exhaustion and attaching a notice of right to sue letter.

IT IS SO ORDERED.

               */s/*
**Hon. Vanessa L. Bryant
United States District Judge**

**Dated at Hartford, Connecticut: December 12, 2018.**